# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **EMERY RESOURCE HOLDINGS, LLC,** a Utah limited liability company, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | Case No. 2:08-cv-907 |
| **COASTAL PLAINS ENERGY, INC.,** a Texas corporation, | |
| Defendant. | Magistrate Judge Paul M. Warner |

Before the court is Coastal Plains Energy, Inc.'s ("Coastal") motion to dismiss, or in the alternative, motion for summary judgment.[1] A hearing on the motion was held on December 1, 2009. At the hearing, Coastal was represented by Catherine L. Brabson and Donald I. Schultz, and Emery Resource Holdings, LLC ("ERH") was represented by Christopher G. McAnany. The court has carefully reviewed the motion, memoranda, and other materials submitted by the parties. After considering the arguments of counsel and taking the motion under advisement, the court renders the following memorandum decision and order.

---

[1] *See* docket no. 20.

**BACKGROUND**

ERH is a limited liability company comprised of ten individuals ("ERH's Members") who hold royalty mineral interests on property in Emery County, Utah, that is currently leased to Coastal for oil and gas development. Coastal operates several natural gas wells on the subject properties and pays royalties directly to ERH's Members. Coastal and ERH's Members are not the original parties to the contracts; Coastal is the successor lessee and ERH's Members are the successor lessors.

In July and August of 2008, ERH's Members each purportedly assigned to ERH "any and all legal claims or causes of action [ERH's Members] may have against Coastal . . . derived or arising from all oil and gas leases in Emery County, Utah, in which Coastal . . . is the mineral lessee and [ERH's Members are] the mineral lessor[s]."[2] ERH's Members did not, however, assign any other interest in the subject property to ERH.

ERH seeks recovery of damages for underpayment of production royalties, equitable accounting, as well as termination of the leases due to Coastal's alleged failure to diligently develop the resource. In particular, ERH set forth the following causes of action in its First Amended Complaint: (1) breach of contract, (2) breach of the implied covenant of reasonable development, (3) declaratory relief, (4) equitable accounting on damages, and (5) conversion. The action was originally filed in state court but has since been removed to federal court under diversity jurisdiction.[3]

---

[2] Docket no. 27, Exhibits A through K.

[3] *See* docket no. 2.

In the instant motion to dismiss, Coastal contends that each of the ten oil and gas leases contains express conditions precedent to an effective assignment of any interest, including legal claims, by ERH's Members. The alleged conditions precedent appear in the following four variations. First, the relevant language in two of the oil and gas leases provides:

> **No change in the ownership of the land, or any interest therein, shall be binding on Lessee until Lessee shall be furnished with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights.**[4]

Second, the relevant language in two of the oil and gas leases states the following:

> If the estate of either party hereto is assigned (and the privilege of assigning in whole or in part is expressly allowed), the covenants hereof shall extend to their heirs, executors, administrators, successors and assigns, but **no change of ownership in the land or in the rentals or royalties shall be binding on the lessee until after notice to the lessee and it has been furnished with the written transfer or assignment or a certified copy thereof**, and in case lessee assigns this lease, in whole or in part, lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.[5]

Third, one oil and gas lease requires that

> [i]f the estate of either party hereto is assigned (and the privilege of assigning in whole or in part is expressly allowed), the covenants hereof shall extend to the heirs, executors, administrators, successors and assigns, but **no change of ownership in the land or in the rentals or royalties shall be binding on the lessee until after notice to the lessee and it has been furnished with the written transfer or assignment or a certified copy thereof.**[6]

And, finally, five of the oil and gas leases contain the following relevant language:

---

[4] Docket no. 18, Exhibits G & I (emphasis added).

[5] Docket no. 18, Exhibits F & J (emphasis added).

[6] Docket no. 18, Exhibit H (emphasis added).

3

> **Notwithstanding any actual or constructive knowledge of or notice to lessee, no change in ownership of said land or of the right to receive rentals or royalties hereunder, or of any interest therein, whether by reason of death, conveyance or any other matter, shall be binding on lessee (except at lessee's option in any particular case) until 90 days after lessee has been furnished written notice thereof**, and the supporting information hereinafter referred to, by the party claiming as a result of such change in ownership or interest. Such notice shall be supported by original or certified copies of all documents and other instruments or proceedings necessary in lessee's opinion to establish the ownership of the claiming party.[7]

Coastal argues that each of the lease provisions highlighted in bold sets forth conditions precedent (namely notice to Coastal) that must be satisfied prior to an effective assignment of interests: royalties, rentals, legal claims, or any other interest. ERH's Members did not provide notice to Coastal of the assignment of legal claims to ERH until after ERH filed the instant action. Specifically, on September 4, 2009, ERH provided an affidavit and copies of the assignments as an attachment to its memorandum in opposition to the instant motion.[8] However, ERH contends that the prohibition on the assignment of interests does not apply to legal claims and that even if it did, ERH has now satisfied the conditions precedent by providing notice to Coastal through its litigation counsel.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[7] Docket no. 18, Exhibits A to E (emphasis added).

[8] *See* docket no. 27.

(2007)); *see also* Fed. R. Civ. P. 12(b)(6).[9] A court should "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). But, the court "need not accept conclusory allegations without supporting factual averments." *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). Thus, "the complaint must give the court reason to believe that this plaintiff has reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).[10]

---

[9] Coastal brought this motion pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). However, because Coastal had already filed an answer, the motion should have been brought as a motion for judgment on the pleadings pursuant to rule 12(c). *See* Fed. R. Civ. P. 12(c), (h)(2); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) ("Normally a motion to dismiss for failure to state a claim upon which relief can be granted should be made prior to filing the answer . . . . If the defendant makes the motion after filing the answer, the motion should generally be treated as a motion for judgment on the pleadings."). However, because the standard of review is the same for both types of motions, the court's decision would be the same whether considered as a 12(b)(6) or a 12(c) motion. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).").

[10] Coastal alternatively brought this motion under rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c). However, as stated at the hearing, the court concludes that the motion for summary judgment is premature at this stage of the case. As such, the court declines to address Coastal's alternative motion for summary judgment.

DISCUSSION

Coastal argues that to survive a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint asserting a breach of contract claim requires that the plaintiff allege that it performed all conditions precedent within the contract. In particular, Coastal asserts that an assignment of any interest under the leases is not effective unless and until (1) Coastal has received written notice that an assignment of ERH's Members' interests or rights has occurred, and (2) Coastal has received delivery of the original or a certified copy of the assignment instrument. In addition, Coastal contends that under five of the leases, ninety days must pass after Coastal is furnished with written notice and the assignment document before the assignment becomes effective. Thus, Coastal concludes that because ERH failed to satisfy and plead compliance with the conditions precedent, ERH's complaint must be dismissed without prejudice. Coastal argues that dismissal is the only remedy because the assignments are ineffective to convey the claims asserted, without joinder of ERH's Members individually.

In response, ERH asserts that the motion should be denied because ERH has pleaded a valid assignment of the legal causes of action pertaining to the leases, not an assignment of the land or royalty interests. Specifically, ERH contends that the legal claims in this matter are unliquidated claims on a debt and may be transferred like any other property right. *See Snow, Nuffer, Egstrom & Drake v. Tanasse*, 980 P.2d 208, 210 (Utah 1999). ERH further argues that contractual terms which purport to limit a party's right to assign its performance obligations or rights under a contract itself do not, absent a specific agreement to the contrary, prohibit assignment of legal claims for breach of contract. *See SME Indus., Inc. v. Thompson, Ventulett,*

*Stainback and Assoc., Inc.*, 28 P.3d 669, 675 (Utah 2001); *Fuller v. Favorite Theaters Co. of Salt Lake*, 230 P.2d 335, 336 (Utah 1951); Restatement (Second) of Contracts § 322.

To determine the original parties' intent under the lease agreements at issue, the court must first examine the language of the contracts. *See Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 207 P.3d 1235, 1240 (Utah 2009). In contract interpretation, courts should "consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *Id.* (quotations and citation omitted). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Green River Canal Co. v. Thayn*, 84 P.2d 1134, 1141 (Utah 2003). Extrinsic evidence is considered in contract interpretation only when the language of the contract is ambiguous, meaning that a contract term or provision "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Café Rio, Inc.*, 207 P.3d at 1240 (quotations and citation omitted). In addition, "[u]nder the well-established rule of construction *ejusdem generis*, [courts shall] determine the meaning of a general contractual term based on the specific enumerations that surround that term." *Id.* (quotations and citation omitted).

The court has carefully reviewed the contracts at issue and has determined that they are unambiguous. The plain language of each of the ten lease agreements demonstrates that prior notice of the assignment of ERH's Members' legal claims arising under the contracts is not required. While the original parties could have contracted to prohibit or limit the assignment of

7

legal claims stemming from breach of the contract, they did not. *See SME Indust., Inc.*, 28 P.3d at 674 (noting that "courts in other jurisdictions have held that where a contract expressly states that the right to sue for breach of contract is non-assignable, full force and effect must be given to such provision"). The original parties to the subject leases merely agreed that the lessor (ERH's Members) would not assign the land, royalties, or other interest *in the land* without first providing notice to the lessee (Coastal).

In particular, the first contract provision that governs two of the leases states that "[n]o change in the *ownership of the land*, or any interest *therein*, shall be binding on Lessee until Lessee shall be furnished with a certified copy of all recorded instruments, all court proceedings and all other necessary evidence of any transfer, inheritance or sale of said rights."[11] Thus, the plain language demonstrates that the lessors (ERH's Members) may not effectively transfer ownership of the land or any interest *in the land* before providing notice to the lessee (Coastal). ERH's Members who are the lessors under these contracts have not transferred their ownership of the land or any interest in the land; they have merely transferred their rights to sue under the leases to ERH. Similarly, the second and third contract provision that governs three of the leases states that "no change of *ownership in the land or in the rentals or royalties* shall be binding on the lessee until after notice to the lessee and it has been furnished with the written transfer or assignment or a certified copy thereof."[12] Similarly, this language prohibits the effective assignment of ownership in the land or the royalties without prior notice to Coastal, but it does

---

[11] Docket no. 18, Exhibits G & I (emphasis added).

[12] Docket no.18, Exhibits F & J (emphasis added).

not prohibit an effective assignment of ERH's Members' rights to sue under the leases. And the final contract provision that governs five of the leases states that "no change in *ownership of said land* or of the *right to receive rentals or royalties hereunder*, or of any interest *therein*, whether by reason of death, conveyance or any other matter, shall be binding on lessee . . . until 90 days after lessee has been furnished written notice thereof."[13] Again, this language prohibits the effective assignment of the ownership of the land, rentals, or royalties, or any interest in the land, rentals, or royalties without first providing notice; it does not restrict the assignment of ERH's Members' legal claims for breach of contract. Furthermore, the court concludes that the purpose of the notice requirement in each of the leases is to inform the lessee of any land transfer so that lease obligations and royalty payments may be redirected to the new owner. The assignments at issue here are not land transfers.

Both parties rely heavily on *SME Industries, Inc.* for their respective positions. In that case, the Utah Supreme Court held that summary judgment was improper because the architectural services contract at issue was ambiguous as to whether it prohibited the assignment of breach of contract claims. *See SME Indus., Inc.*, 28 P.3d at 675. Coastal argues that the language restricting assignment in the contracts at issue in the instant case is much stronger than the non-assignability language in *SME Industries, Inc. See id.* at 674-75. The court does not agree. The specific contractual language in *SME Industries, Inc.* stated as follows: "neither party shall assign its interest in this Agreement." *Id.* The Utah Supreme Court remanded the case to the trial court to determine whether the prohibition on the assignment of "interest in this

---

[13] Docket no. 18, Exhibits A to E (emphasis added).

Agreement" included a cause of action for breach of contract after the contract had been fully performed. *Id.* at 675. The court determined that language was ambiguous because both parties had presented contrary tenable interpretations. *See id.* This court does not conclude that ERH and Coastal have both presented contrary tenable interpretations of the lease agreements. The plain language in each of the ten lease agreements does not prohibit ERH's Members from assigning *any* interest in their respective agreements; it prohibits them from assigning their interest in the land or in the royalties without prior notice of the assignment.

Coastal asserts that the leases at issue are executory in nature because they require ongoing royalty payments to ERH's Members, and therefore any causes of action arising from them are non-assignable. Again, this court does not agree. A contract is executory when it "remains wholly unperformed" or "there remains something still to be done on both sides." Black's Law Dictionary 321 (7th ed. 1999). In the bankruptcy context, the United States Court of Appeals for the Tenth Circuit has adopted the "Countryman" definition of an executory contract. *In re Baird*, 567 F.3d 1207, 1210 (10th Cir. 2009). The Countryman definition provides that a contract is executory when "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id.* at 1210. Furthermore, the Utah Supreme Court held that "'the provision prohibiting the assignability of the *contract itself* does not affect the assignability of a cause of action which has arisen from the breach.'" *SME Industries, Inc.*, 28 P.3d at 674 (quoting *Fuller v. Favorite Theatres Co.*, 230 P.2d 335, 336 (Utah 1951)). The court explained that a provision prohibiting the assignment of a contract is

10

"valid only so long as such a contract is executory" because "'parties have the right to select and insist upon the personalities with which they will sustain . . . personal relationships.'" *Id.* (quoting *Prudential Federal Saving and Loan Ass'n v. Hartford*, 325 P.2d 899, 904 (Utah 1958)). However, once the contract "has been performed and the only thing remaining is payment for the service rendered, the contract is no longer one for personal services and the reason for non-assignability no longer exists." *Id.*

Additionally, some courts have held that oil and gas leases are not executory in nature because the lessors' "only obligations under the contract is to defend [their] title to the leased land and not to interefere with the lessees' drilling operation." *In re Heston Oil Co.*, 69 B.R. 34, 36 (N.D. Okl. 1986); *see also In re WRT Energy Corp.*, 202 B.R. 579, 583 (Bankr. W.D. La. 1996) (holding that under an oil and gas lease the obligations of the lessor are not affirmative duties and any breach by the lessor would not excuse but only delay the performance of the lessee). Similarly, the only way in which ERH's Members could breach their obligations under the leases would be to interfere with Coastal's operation. As such, the court concludes that said contracts are not executory in nature.

Based on the foregoing, the court concludes that the oil and gas leases at issue are not executory contracts. Because they are not executory contracts and do not require notice of the

assignment of legal claims, ERH's amended complaint sufficiently states a claim upon which relief may be granted. As such, Coastal's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

DATED this 26th day of March, 2010.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge